**Opinion issued November 25, 2025**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-25-00016-CV

_____

## CITY OF HOUSTON, Appellant

## V.

## JAVIER TAPIA AND JENNIFER WELBORN, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVES OF THE ESTATE OF A.W.T., Appellees

---

On Appeal from the 215th District Court
Harris County, Texas
Trial Court Case No. 2022-80508

---

## MEMORANDUM OPINION

This wrongful death lawsuit arises from the death of a seventeen-year-old girl who was tragically struck and killed by a train running through a public park in the City of Houston, Texas. The girl's parents, Javier Tapia and Jennifer Welborn,

individually and as the personal representatives of their daughter's estate, sued the City asserting claims of premises liability and gross negligence. The City filed a Rule 91a Motion to Dismiss seeking dismissal of Appellees' claims based on immunity. The trial court denied the motion.

In two issues, the City argues the trial court erred in denying its Rule 91a Motion to Dismiss because Appellees did not allege sufficient facts (1) establishing the City had formal or actual notice of their claims, and (2) that their claims fall within the Texas Tort Claims Act's waiver of immunity.[1]

We affirm.

## Background

Appellees Javier Tapia and Jennifer Welborn first sued Union Pacific Railroad Company in state court. Following a remand from federal court, Appellees added the City of Houston and Memorial Park Conservancy, Inc. as defendants in their First Amended Petition—the operative pleading before the trial court when it ruled on the City's Rule 91a Motion to Dismiss.

In their First Amended Petition, Appellees alleged that their daughter, seventeen-year-old A.T. ("Alice"), "was struck and killed by a fast-moving Union Pacific train running through Memorial Park" in Houston, Texas on November 15, 2022. According to Appellees, the City "owns and controls Memorial Park" and

---

[1] *See* TEX. CIV. PRAC. & REM. CODE § 101.001, et seq. ("TTCA").

"Memorial Park Conservancy, Inc. operates and maintains the park." They alleged that a set of "active" railroad tracks "owned, possessed, occupied, and controlled" by Union Pacific "runs north-south through" Memorial Park. And that the City monitors "the park grounds through its relationship with the Conservancy and by other means, including patrols by the City of Houston Police Department." Appellees also alleged that City "officials were aware that pedestrians habitually accessed the tracks" and they were aware "of the extreme danger the active tracks presented to those pedestrians."

According to Appellees, on the day of the accident, Alice and her friend G.D. ("Gina") drove to Memorial Park.[2] After parking along West Memorial Loop Drive, the girls walked along "a foot trail onto wide-open train tracks, where they began walking a few feet south along the tracks." Alice had "never visited this location" and "it appeared that the tracks were abandoned." There were no "fencing or other barriers" or "signs that warned of active train lines." As the girls continued to walk south along the tracks, the tracks crossed over Memorial Drive on two bridges. The girls stopped to draw with chalk on one of the bridges. They then "stopped to sit and talk."

Appellees alleged that unbeknownst to the girls, a Union Pacific train was traveling northeast toward them. The train, which apparently was traveling "at

---

[2] Because they were minors when the accident occurred, we refer to A.T. and G.D. using pseudonyms.

nearly 46 miles per hour," was "manned by a Union Pacific conductor and engineer." When the girls saw the train, they tried to escape its path. Although Gina was able to "dodge[] the train by mere feet," Alice "ran toward the opposite side of the tracks but was not able to "clear[] the train's path." She was struck and killed by the train.[3]

The City of Houston Police Department responded to the accident and officers made a report of Alice's death. Days later, on November 18, 2023, Jennifer Welborn, Alice's mother, accompanied by a small number of friends and family, met with the "CEO of the Conservancy to discuss the tragedy." They traveled on a golf cart "to the location of [Alice's] death" and Welborn "complained [to the CEO] that there was no fencing or barriers prohibiting access to the train tracks." While the City initially "provided police presence to monitor—and prevent pedestrian access to—the train tracts," police presence ceased "[a]fter a few days."

Appellees filed a wrongful death action suit against the City, Union Pacific, and the Conservancy. Appellees asserted a premises liability and gross negligence claim against the City. The City asserted numerous governmental immunity defenses as well as myriad other defenses, including contributory and comparative negligence, unavoidable accident, sudden emergency, and misuse of property.

---

[3] According to Tapia's pleadings, the train's engineer applied the emergency brake one second before impact.

The City filed a Rule 91a Motion to Dismiss or in the Alternative, a Traditional Motion for Summary Judgment Based on Immunity and Motion to Sever ("Motion to Dismiss").[4]  In the Motion to Dismiss, the City averred that "[n]o City of Houston employee nor any City of Houston premises were involved" in the accident that resulted in Alice's death.  The Motion to Dismiss was based on several theories.  The City argued that

- The TTCA's waiver of governmental immunity was ineffective because Appellees had not provided the statutory ninety-day notice of their claim to the City;[5]

- The TTCA's waiver of governmental immunity was ineffective because Alice had not paid for the use of the park and thus was not an invitee;[6]

- Under the Texas Recreational Use Statute, Alice was a trespasser engaged in a recreational activity;[7]

---

[4]  This appeal only pertains to the Rule 91a Motion to Dismiss and not the summary judgment portion of the motion.

[5]  *See* TEX. CIV. PRAC. & REM. CODE § 101.101.

[6]  TEX. CIV. PRAC. & REM. CODE § 101.022(a) provides that "if a claim arises from a premise defect, the governmental unit owes to the claimant only the duty that a private person owes to a licensee on private property, unless the clamant pays for the use of the premises."

[7]  The Texas Recreational Use Statute provides in pertinent part:

> If an owner, lessee, or occupant of real property other than agricultural land gives permission to another to enter the premises for recreation, the owner, lessee, or occupant, by giving the permission, does not:
>
> (1) assure that the premises are safe for that purpose;
>
> (2) owe to the person to whom permission is granted a greater degree of care than is owed to a trespasser on the premises; or

- Given Alice's status as a trespasser, Appellees cannot recover on their claim for negligence;[8]

- The TTCA does not authorize exemplary damages;[9]

- The TTCA does not provide a waiver of governmental immunity for premises that are not owned by the City, and neither the train, the train tracks, nor the land "on either side" of the tracks where Alice was walking is owned by the City;

- Appellees lack standing to bring their wrongful death claims because the claims are not "viable causes of action," given that Appellees did not give statutory notice to the City regarding its culpability for Alice's death, there was no immunity waiver for invitee status, Alice did not pay for admission, the Texas Recreational Use Statute bars Appellees' negligence theory, there was no authorization for exemplary damages, and there was no City ownership of the premises where Alice was killed; and

---

(3) assume responsibility or incur liability for any injury to any individual or property caused by any act of the person to whom permission is granted.

TEX. CIV. PRAC. & REM. CODE § 75.002(c). Recreation, which is defined in Section 75.001, lists a number of outdoor recreational activities and includes any activity that is "associated with enjoying nature or the outdoors." *Id.* 75.001(3)(L).

[8] The City owes a trespasser only the duty to avoid injuring him "willfully, wantonly, or through gross negligence." *Boerjan v. Rodriguez*, 436 S.W.3d 307, 301 (Tex. 2014) (quoting *Tex. Utilities Elec. Co. v. Timmons*, 947 S.W.2d 191, 193 (Tex. 1997). The City owes a duty of ordinary care to a licensee. *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 656 (Tex. 2012). "[S]uch duty 'requires that a landowner not injure a licensee by willful, wanton, or grossly negligent conduct, and that the owner use ordinary care either to warn a licensee of, or to make reasonably safe, a dangerous condition of which the owner is aware and the licensee is not.'" *Id.* (quoting *State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992)).

[9] *See* TEX. CIV. PRAC. & REM. CODE § 101.024 ("This chapter does not authorize exemplary damages.").

- Appellees cannot bring a survival claim against the City because Alice would not have been able to bring a claim against the City had she lived.

Appellees responded arguing the City had actual notice of its claims, thus formal notice was not required. They argued that "*within days* of [Alice's] death, City police officers were informed that the City caused [Alice's] death by refusing to warn or make safe Memorial Park (through signs or barriers) from the danger of active trains running through the middle of the park." (Emphasis in original.) Appellees disputed Alice's status as a trespasser, asserting she was a licensee, and they noted that even if she were a trespasser, Appellees had adequately stated a claim for gross negligence to defeat the Rule 91a motion. Appellees rejected the City's argument that it did not own the land on either side of the railroad tracks where Alice was walking because they alleged the City owned "the premises immediately adjacent to the tracks" where Alice was struck by the train. Moreover, Appellees argued, the City's allegations "turn on the City's failure to warn or make safe at *any* point in Memorial Park between where the girls parked . . . and where [Alice] was struck."

In its reply, the City reiterated that Alice was subject to both the TTCA and the Texas Recreational Use Statute, the latter of which conferred trespasser status

7

on her.[10]   Thus, the City argued, it was entitled to dismissal of claims that identified Alice as an invitee.  Moreover, because Alice was a trespasser under the Texas Recreational Use Statute, Appellees were precluded from bringing a premises liability claim.  The City further argued it was entitled to dismissal of the premises liability and gross negligence claims because the City did not own the property where the injuries occurred.  Finally, the City averred that because the TTCA and Texas Recreational Use Statute would have barred Alice's claims against the City had she lived, Appellees lacked standing to assert survival claims or wrongful death claims.[11]

The trial court denied the City's Motion to Dismiss.[12]   This interlocutory appeal ensued.[13]

---

[10]   The City filed its reply brief after the deadline enumerated in Texas Rule of Appellate Procedure 38.6(c).  The City filed a motion for extension of time to file its reply brief.  We grant the motion.

[11]   In its reply, the City did not address Tapia's claim that it provided actual notice to the City.

[12]   In its order denying the City's Motion to Dismiss, the trial court granted Tapia's motion for continuance of the City's motion for summary judgment.  This appeal does not concern the motion for continuance or any matters concerning the City's summary judgment motion.

[13]   Although denials of Rule 91a motions generally are not appealable, there are exceptions, such as when a Rule 91a motion challenges a trial court's subject-matter jurisdiction based on governmental immunity.  *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(5),(8); *Hung v. Davis*, No. 01-20-00746-CV, 2022 WL 1008805, at *3 (Tex. App.—Houston [1st Dist.] Apr. 5, 2022, no pet.) (mem. op.).  The Texas Supreme Court has recognized that "an appeal may be taken from orders denying an assertion of immunity, as provided in section 51.014(a)(5), regardless of the procedural vehicle used."  *Austin State Hosp. v. Graham*, 347

## Applicable Law and Standard of Review

Texas Rule of Civil Procedure 91a allows a party to move for early dismissal of a cause of action that "has no basis in law or fact." *See* TEX. R. CIV. P. 91a.1; *Burns v. EMD Supply Inc.*, No. 01-22-00929-CV, 2024 WL 1558720, at *5 (Tex. App.—Houston [1st Dist.] Apr. 11, 2024, no pet.) (mem. op.). "A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought." TEX. R. CIV. P. 91a.1; *see also Burns*, 2024 WL 1558720, at *5 (same). There are generally two circumstances where a cause of action has no basis in law: (1) when the plaintiff fails to plead a "viable, legally cognizable" cause of action, or (2) when the plaintiff has alleged facts that negate entitlement to the relief requested. *See Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 608 (Tex. App.—Corpus Christi-Edinburg 2017, no pet.); *Stallworth v. Ayers*, 510 S.W.3d 187, 190 (Tex. App.—Houston [1st Dist.] 2016, no pet.). We review a trial court's ruling on a

---

S.W.3d 298, 301 (Tex. 2011); *see also City of Houston v. Hernandez*, No. 14-23-00916-CV, 2024 WL 3867828, at *1 (Tex. App.—Houston [14th Dist.] Aug. 20, 2024, no pet.) (mem. op.) ("[T]he supreme court has declared that we have subject-matter jurisdiction over the interlocutory denial of a Rule 91a motion.") (citing *San Jacinto River Auth. v. Medina*, 627 S.W.3d 618, 621 (Tex. 2021) (citing TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8)); *City of Austin v. Liberty Mut. Ins.*, 431 S.W.3d 817, 822 (Tex. App.—Austin 2014, no pet.) (stating that because Rule 91a motion challenged subject-matter jurisdiction, section 51.014(a)(8) afforded city right to take interlocutory appeal from denial of motion).

Rule 91a motion de novo.  *Bethel v. Quilling, Selander, Lownds, Winslett & Moser, P.C.*, 595 S.W.3d 651, 654 (Tex. 2020).

A court may not consider evidence when ruling on a Rule 91a motion.  TEX. R. CIV. P. 91a.6.  It must "decide the motion based solely on the pleading of the cause of action, together with any pleading exhibits" allowed by Rule 59[14] of the Texas Rules of Civil Procedure.  *Id*.  A Rule 91a motion may be premised on affirmative defenses, in which case the court may consider the defendant's pleadings.  *See Bethel*, 595 S.W.3d at 656 (noting trial court may consider defendant's pleadings to determine whether affirmative defense is properly before court).  "Rule 91a permits motions to dismiss based on affirmative defenses 'if the [claimant's] allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.'" *Id.* (quoting TEX. R. CIV. P. 91a.1); *see also City of Houston v. Houston Metro Sec.*, No. 01-22-00532-CV, 2023 WL 2602520, at *3 (Tex. App.—Houston [1st Dist.] Mar. 23, 2023, no pet.) (mem. op.) ("Immunity from suit may be asserted through a Rule 91a motion to dismiss."); *City of Houston v. Boodoosingh*, 693 S.W.3d 894, 896 n.1 (Tex. App.—Houston [14th Dist.] June 27, 2024, no pet.) (noting Rule 91a motion to

---

[14]   Texas Rule of Civil Procedure 59 provides that "[n]otes, accounts, bonds, mortgages, records, and all other written instruments, constituting, in whole or in part, the claim sued on, or the matter set up in defense, may be made a part of the pleadings . . . and shall be deemed a part thereof for all purposes." TEX. R. CIV. P. 59.

10

dismiss is appropriate vehicle for governmental entity to assert trial court lacked subject-matter jurisdiction because entity had not waived immunity). If an affirmative defense on which a Rule 91a motion is based cannot be "conclusively established" by the facts pled in the plaintiff's petition and requires evidentiary consideration, the defense is "not a proper basis for a [Rule 91a] motion to dismiss." *Bethel*, 595 S.W.3d at 656.

### Governmental Immunity and the TTCA

Subject matter jurisdiction is implicit in a court's power to decide a case. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013). To establish subject matter jurisdiction, a plaintiff must allege facts that demonstrate affirmatively the court's jurisdiction to hear her claims. *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 550 (Tex. 2019). "Whether a court has subject matter jurisdiction is a question of law." *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004).

Governmental immunity protects political subdivisions of the state from lawsuits and liability for monetary damages unless their immunity is waived by the Legislature. *See Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*, 646 S.W.3d 329, 332 (Tex. 2022); *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 (Tex. 2008) ("Sovereign immunity and its counterpart, governmental immunity, exist to protect the State and its political subdivisions

11

from lawsuits and liability for money damages."). Government entities such as the City of Houston are immune from suit unless immunity is waived by state law. *City of San Antonio v. Maspero*, 640 S.W.3d 523, 528 (Tex. 2022). Waivers of immunity "must be clear and unambiguous" and any purported waiver of immunity must be strictly construed in favor of retaining immunity. *PHI, Inc. v. Tex. Juv. Just. Dep't*, 593 S.W.3d 296, 303 (Tex. 2019) (citing *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012)).

The TTCA waives immunity from suit for negligent acts in certain circumstances. Relevant to the issues here, a governmental unit in the state is liable for "personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." TEX. CIV. PRAC. & REM. CODE § 101.021(2).

**Notice Under the TTCA**

Generally, to rely on a waiver of immunity under the TTCA, a claimant must notify the government entity of the negligent acts not later than six months after the day of the incident at issue. *Id.* § 101.101(a). However, a city may abbreviate the time for notice in its charter. *City of Houston v. McGowen*, No. 14-13-00415-CV, 2014 WL 2039856, at *3 (Tex. App.—Houston [14th Dist.] May 15, 2014, no pet.) (mem. op.) (citing TEX. CIV. PRAC. & REM. CODE § 101.101(b)); *see also City*

12

*of Beaumont v. Armstead*, No. 09-15-00480-CV, 2016 WL 1053953, at \*4 (Tex. App.—Beaumont Mar. 17, 2016, no pet.) (mem. op.) ("The TTCA expressly ratifies and approves city charters and ordinances requiring notice within a charter period permitted by law.") (citing TEX. CIV. PRAC. & REM. CODE § 101.101(b)). The City's charter requires notice within ninety days of the incident.[15] *See generally City of Houston v. Torres*, 621 S.W.2d 588, 590 (Tex. 1981) (reversing and rendering judgment, ordering that plaintiff who did not comply with ninety-day notice period take nothing; noting city's notice requirement for claims is mandatory and a condition precedent to recovering damages from City); *City of Houston v. McGowen*, No. 14-13-00415-CV, 2014 WL 2039856, at \*1 (Tex. App.—Houston [14th Dist.] May 15, 2014, no pet.) (mem. op.) (reversing denial of City's plea to jurisdiction because City did not have notice of claim within ninety days).

---

[15]     Article IX, Section 11 of Houston's City Charter provides in pertinent part:

> Before the City of Houston shall be liable for damages for personal injuries of any kind, or for injuries to or destruction of property of any kind, the person injured . . . or some one [sic] in his behalf, shall give the Mayor and City Council notice in writing of such injury or destruction, duly verified, within ninety days after the same has been sustained . . . . [A] failure to so notify the Mayor and City Council within the time and manner specified herein shall exonerate, excuse and exempt the City from any liability whatsoever . . . .

HOUSTON, TEX., CITY CHARTER art. IX, § 11.  Notice is to be given to the city secretary.  HOUSTON, TEX., CODE OF ORDINANCES, art. IV, § 2-74.

The required "notice must reasonably describe the injury, the time and place of the incident, and the incident itself," unless the governmental unit has actual notice of the injury. *Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia*, 324 S.W.3d 544, 546 (Tex. 2010); *see also* TEX. CIV. PRAC. & REM. CODE § 101.101(a). The TTCA's notice requirements "allow[ ] [a] governmental [unit] to investigate claims while the facts are fresh, to guard against unfounded claims, to settle claims, and to prepare for trial." *Anderson v. Waller Cnty. & Waller Cnty. Sheriff's Dep't*, No. 01-20-00097-CV, 2021 WL 3042677, at *6 (Tex. App.—Houston [1st Dist.] July 20, 2021, pet. denied) (mem. op.) (quoting *City of Houston v. Miller*, No. 01-19-00450-CV, 2019 WL 7341666, at *3 (Tex. App.—Houston [1st Dist.] Dec. 31, 2019, no pet.) (mem. op.) (internal quotations omitted)).

Notice "is a jurisdictional requirement in all suits against a governmental unit." *City of Dallas v. Carbajal*, 324 S.W.3d 537, 537–38 (Tex. 2010) (citing TEX. GOV'T CODE § 311.034). As such, it presents a question of law we review *de novo*. *Reyes v. Jefferson Cnty.*, 601 S.W.3d 795, 798 (Tex. 2020) (citing *Worsdale v. City of Killeen*, 578 S.W.3d 57, 66 (Tex. 2019)). Failure to comply with the TTCA's notice provisions requires dismissal. *See City of Houston v. Huff*, No. 01-22-00496-CV, 2023 WL 8938406, at *8 (Tex. App.—Houston [1st Dist.] Dec. 28, 2023, no pet.) (mem. op.) (citing *City of San Antonio v. Tenorio*, 543 S.W.3d 772, 775–76 (Tex. 2018)); *City of Houston v. Musyimi*, No. 01-21-00670-CV, 2022 WL

2919724, at *3 (Tex. App.—Houston [1st Dist.] July 26, 2022, no pet.) (mem. op.) (same).

## Actual Notice

In its first issue, the City argues Appellees did not satisfy the TTCA's notice requirement and thus, Appellees' suit against the City should have been dismissed. Appellees concede they did not give the City formal notice of their claims. They argue, however, that formal notice was not required because the City had actual notice of their claims.

Appellees correctly note that formal notice is not required "if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." TEX. CIV. PRAC. & REM. CODE § 101.101(c). But "[k]nowledge that a death, injury, or property damage has occurred, standing alone, is not sufficient to put a governmental unit on actual notice for TTCA purposes." *Musyimi*, 2022 WL 2919724, at *3–4 (quoting *Tenorio*, 543 S.W.3d at 776); *see also Worsdale*, 578 S.W.3d at 72 ("[M]ere knowledge that something happened somewhere to someone or something would hardly ever be enough to alert a governmental unit of alleged wrongdoing and the necessity of mounting a defense."); *City of Houston v. Wilson*, No. 01-22-00796-CV, 2023 WL 5615817, at *6 (Tex. App.—Houston [1st Dist.] Aug. 31, 2023, no pet.) (mem. op.) ("Mere knowledge that an accident

15

occurred, without more, does not establish a governmental unit's subjective awareness of its alleged fault in producing or contributing to allegations of personal injury or property damage.") (citing *Worsdale*, 578 S.W.3d at 72).

A governmental unit has actual notice under the TTCA if it has subjective knowledge of "(1) a death, injury, or property damage; (2) the governmental unit's fault that produced or contributed to the death, injury, or property damage; and (3) the identity of the parties involved." *Tenorio*, 543 S.W.3d at 776 (citing *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995)); *see also Worsdale*, 578 S.W.3d at 77 ("Actual notice means the governmental unit is subjectively aware that it may be responsible for death, injury, or property damage in the manner ultimately alleged by the claimant."). To have actual notice, the governmental unit needs more than knowledge of "some injury." *Musyimi*, 2022 WL 2919724, at *4. It must have "knowledge of information sufficient to identify the loss ultimately alleged." *Id.* (citing *Worsdale*, 578 S.W.3d at 71). The governmental unit need not believe it was liable for the plaintiff's injuries to have actual notice, however. *Reyes*, 601 S.W.3d at 798 ("The actual-notice standard does not require proof that the [governmental unit] *believed* it was liable.") (emphasis in original). It must only be "aware that it may be responsible for" the injury or death. *Id.*

Even if a governmental unit investigates an accident, the particular facts dictate whether the information acquired imparted actual notice on the

16

governmental entity. *Musyimi*, 2022 WL 2919724, at \*4 (citing *Jones v. Bd. of Tr. of Galveston Wharves*, 605 S.W.3d 641, 643 (Tex. App.—Houston [1st Dist.] 2020, no pet.)); *Tenorio*, 543 S.W.3d at 776 (noting if governmental unit investigates accident, whether information acquired imparted actual notice depends on particular facts of case).

In their First Amended Petition, Appellees allege the City "received the required notice of [their] claim because . . . it had actual notice that death occurred." Standing alone, this allegation is insufficient; that is, although it satisfies the first actual notice requirement, Appellees also need to allege facts showing the City had actual notice that its fault "produced or contributed to the death, injury, or property damage; and [] the identity of the parties involved." *See Tenorio*, 543 S.W.3d at 776.

According to Appellees' First Amended Petition, the City "owns and controls" Memorial Park "as well as the premises immediately adjacent to the tracks where [Alice] was killed." And the Conservancy "operates, maintains, and controls Memorial Park." They allege that Union Pacific's "train tracks are yards away from the Cullen Running Trails Center," where the Conservancy's offices are located inside the park. Appellees further pled that the City and other defendants were aware:

> [T]hat park pedestrians (adults and minors) could freely access, and in fact did habitually access, these locations, including the train tracks.

17

Defendants[16] knew of the dangers created by open pedestrian access, without warnings, to the active train tracks around these locations.

Defendants created a condition in those areas that posed an unreasonable risk of harm—*i.e.*, the risk of death or serious injury due to active trains traveling up to 60 miles per hour (or more)—and Defendants *had actual knowledge of that condition.*

. . .

Defendants were aware of the tracks' public-park location, the park's trails and parking lots leading directly to the incident site, and abundant graffiti at the location where [Alice] was killed. Defendants also were aware that pedestrians, including school-aged children, regularly accessed these locations.

. . . Defendants knew that pedestrians in Memorial Park habitually accessed their train tracks, and they acquiesced to that near-daily reality.

(Emphasis added.) Appellees additionally pled that the City "monitored the park grounds through its relationship with the Conservancy and by other means, including patrols by the City of Houston Police Department," and that "City officials were aware that pedestrians habitually accessed the tracts" and knew "of the extreme danger the active tracks presented to those pedestrians." Further, they pled that "no fencing or barriers prevent[ed] pedestrian access to the tracks."

Appellees alleged that the "City of Houston Police Department responded to the incident" and "took a report of Alice's death;" that days after the accident,

---

[16] Appellees state in their First Amended Petition that "Defendants" refers collectively to Union Pacific, the City, and the Conservancy.

Welborn met with the "CEO of the Conservancy to discuss the tragedy;" and that Welborn "complained that there was no fencing or barriers prohibiting access to the train tracks." Appellees alleged that the Conservancy responded by "coordinating with the City of Houston Policy Department, which temporarily provided police presence to monitor—and prevent pedestrian access to—the train tracks." [17]

Taking Appellees' allegations as true, as we must, we conclude that Appellees' First Amended Petition sufficiently pled facts reflecting the City had actual notice of the claims against it—that it had subjective knowledge of (1) Alice's death, (2) the City's alleged fault that produced or contributed to Alice's death, and (3) the identity of the parties involved. [18] The trial court thus properly denied the City's Rule 91a Motion to the extent it was based on lack of notice. *See City of Houston v. Polk*, No. 14-23-00360-CV, 2025 WL 1692588, at *4 (Tex. App.—Houston [14th Dist.] June 17, 2025, no pet. h.) (mem. op.) (holding trial court properly denied City's Rule 91a motion based on lack of notice).

---

[17] Evidence of subsequent remedial measures may prove control over the premises when control is at issue. *See City of El Paso v. Viel*, 523 S.W.3d 876, 897 n.11 (Tex. App.—El Paso 2017, no pet.). *Viel* involved a TTCA premise defect claim.

[18] *See generally City of Wichita Falls v. Jenkins*, 307 S.W.3d 854, 858 (Tex. App.—Fort Worth 2010, pet. denied) ("[G]overnmental entities have actual notice to the extent that a prudent entity could ascertain its potential liability stemming from an incident, either by conducting further investigation or because of its obvious role in contributing to the incident.").

19

We overrule the City's first issue.

## Claims Within the TTCA

In its second issue, the City argues that Appellees did not plead sufficient facts establishing a duty the City violated, arguing Appellees have "no premises liability claim and no negligence and certainly not [a] gross negligence claim against [the City]."

"[A] defendant in a premises case is liable only to the extent it owes the plaintiff a legal duty." *Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 217 (Tex. 2008).[19] The City argues that Appellees "pled no facts to show that [the City] owned, possessed, occupied, or controlled the railroad tracks. Accordingly, [they have] not shown facts that would show a duty that [the City] could have violated." We disagree.

In their First Amended Petition, Appellees pled that:

- "After picking up Alice at her home, Alice's friend drove the two to Memorial Park, where they wanted to go walking. They parked along West Memorial Loop Drive";

---

[19] The scope of the defendant's duty to the plaintiff in a premises liability claim varies depending on whether the plaintiff is an invitee, licensee, or trespasser. *City of Austin v. Membreno Lopez as Next Friend of Lopez*, 632 S.W.3d 200, 211 (Tex. App.—Austin 2021, pet. denied) (citation omitted). There are four recognized exceptions to the requirement that the defendant in a premises liability case be an owner or occupier of land, at least one of which is potentially applicable here, as noted below. *See Holland v. Mem'l Hermann Health Sys.*, 570 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (discussing exceptions).

20

- The City owns and controls Memorial Park;

- Alice and Gina "followed a foot-trail onto the wide-open train tracks, where they began walking a few feet south along the tracks," which appeared to be "abandoned";

- Alice was struck and killed by a Union Pacific train running through Memorial Park;

- The City monitored the park, including by Houston Police Department patrols, and was "aware that pedestrians habitually accessed the tracks, and of the extreme danger the active tracks presented to those pedestrians";

- The Houston Police Department temporarily "provided police presence to monitor—and prevent pedestrian access to—the train tracks" soon after Alice's death;

- The City "owned, possessed, occupied, and/or controlled Memorial Park, including the Cullen Running Trails Center, as well as the premises immediately adjacent to the tracks where [Alice] was killed";

- The City was aware that park pedestrians (adults and minors) could freely access, and in fact did habitually access, these locations, including the train tracks;

- The City was "aware of the tracks' public-park location, the park's trails and parking lots leading directly to the incident site, and abundant graffiti at the location where [Alice] was killed." The City also was aware that "pedestrians, including school-aged children, regularly accessed these locations";

- The City and the other defendants knew pedestrians in the park "habitually accessed" the train tracks and "acquiesced to that near-daily reality"; and

- Defendants at least owed Avery and Gina a duty to warn because the defendants knew "that trespassers frequented the area because of the tracks' public-park location, the trails leading directly to the incident site, the abundant graffiti at the incident location, and further evidence. Defendants thus owned [Alice] and her friend a duty to warn of the dangerous condition

21

. . . or take other action for their protection." For example, they could have posted a sign, installed a gate, or provided an enclosed fence near the tracks.

Given these allegations, we conclude Appellees pled sufficient facts for their premises liability claim to survive the City's Rule 91a motion. *See Holland v. Mem'l Hermann Health Sys.*, 570 S.W.3d 887, 897 (Tex. App.—Houston [1st Dist.] 2018, no pet.) ("[A] person who has created a dangerous condition may be liable even though not in control of the premises at the time of injury.") (quoting *Hirabayashi v. N. Main Bar-B-Q, Inc.*, 977 S.W.2d 704, 707 (Tex. App.—Fort Worth 1998, pet. denied)). As set forth above, Appellees pled that the City created the dangerous condition that led to Alice's death, and we must take Appellees' pleadings as true in a Rule 91a analysis. *See Tex. Dep't of Ins. v. Stonewater Roofing, Ltd.* Co., 696 S.W.3d 646, 662 (Tex. 2024) (noting "we take as true under Rule 91a" plaintiff's pleadings); TEX. R. CIV. P. 91a.1 ("A cause of action has no basis in law if the allegations, *taken as true*, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.") (emphasis added).[20, 21]

---

[20] A second exception to the owner-occupier requirement may also be applicable. *See Jones v. Wright*, 667 S.W.3d 444, 450 (Tex. App.—Beaumont 2023, no pet.) ("[W]here an obscured danger exists on land directly appurtenant to the land owned or occupied and near where invitees enter and exit the landowner's or occupier's property, the owner or occupier owes a duty to those invitees entering and exiting to warn of the danger.") (citing *Hirabayashi v. N. Main Bar-B-Q, Inc.*, 977 S.W.2d 704, 707 (Tex. App.—Fort Worth 1998, pet. denied)). Appellees pled that Alice was an invitee and that Alice thought the train tracks were abandoned. We must take Appellees' pleadings as true in a Rule 91a analysis. *See Tex. Dep't*

22

As part of its second issue, the City also relies on statements pled in Appellees' Second Amended Petition involving CenterPoint Energy Houston Electric, LLC's operation, management, maintenance and control of easements in Memorial Park, "including premises immediately adjacent to the tracks where [Alice] was killed."[22] The City argues that these allegations "conclusively eliminate[] any possible premises claim against [the City]." But the Second Amended Petition was not filed until November 12, 2024, nearly six months after the City's Motion to Dismiss was filed and nearly five months after the submission date for the Motion to Dismiss. Consequently, we cannot consider the Second Amended Petition in determining whether the trial court erred in denying the City's Rule 91a Motion to Dismiss. *See* TEX. R. CIV. P. 91a.5; *Seger v. Branda*, No. 01-21-00224-CV, 2022 WL 17981559 at *4 (Tex. App.—Houston [1st Dist.] Dec. 29, 2022, pet. denied) (mem. op.) (holding court could not consider amended

---

*of Ins. v. Stonewater Roofing, Ltd.* Co., 696 S.W.3d 646, 662 (Tex. 2024) (reviewing plaintiff's pleadings, "which we take as true under Rule 91a."); TEX. R. CIV. P. 91a.1 ("A cause of action has no basis in law if the allegations, *taken as true*, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought.") (emphasis added).

[21] The City's one-paragraph argument as to Appellees' premises liability, negligence, and gross negligence claims is based on the same contention that Appellees did not establish the City "owned, possessed, occupied or controlled" the railroad tracks. We thus need not separately address the negligence and gross negligence arguments.

[22] Appellees added CenterPoint Energy Houston Electric, LLC as a defendant in their Second Amended Petition.

23

pleading filed seven weeks after trial court conducted hearing on Rule 91a motion in reviewing trial court's ruling on motion).

In its reply brief, the City also argues for the first time that the railroad tracks were "open and obvious" and thus, it had no duty to warn Alice of any danger posed by the tracks. The City did not raise this issue in its opening brief, nor did it make an open and obvious argument in its Rule 91a motion other than noting Appellees had not plead "that the railroad tracks [were] obscured."[23] Even if we considered the argument, the City would not prevail. Appellees alleged in their First Amended Petition that "Alice had never before been to this location," that "it appeared [to Alice] that the tracks were abandoned," that "[u]nbeknownst to Alice and many other pedestrians, Union Pacific personnel periodically drove its trains on the tracks," and that there were no "fencing or other barriers" or "signs that warned of active train lines." Given that we must construe the pleadings liberally in favor of Appellees and accept as true the factual allegations in their pleadings, we conclude their allegations are sufficient to overcome the open and obvious argument asserted by the City in its reply brief.

We overrule the City's second issue.

---

[23] "[G]rounds for Rule 91a motions must be raised in the trial court." *Wooley v. Schaffer*, 447 S.W.3d 71, 83–84 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (Frost, C.J., concurring). "Arguments raised for the first time in a reply brief are waived." *Metro. Transit Auth. of Harris Cnty. v. Douglas*, 544 S.W.3d 486, 495 n.13 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

24

## Conclusion

We affirm the trial court's order denying the City of Houston's Motion to Dismiss.

Veronica Rivas-Molloy
Justice

Panel consists of Justices Rivas-Molloy, Gunn, and Caughey.